UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA HATFIELD,<br><br>                    Plaintiff,<br><br>v.<br><br>BONNEVILLE COUNTY, a political subdivision of the State of Idaho; and LANCE BATES, in his official and individual capacity,<br><br>                    Defendants. | Case No. 4:23-cv-00213-AKB-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Joshua Hatfield's Motion to Compel communications with ICRMP. (Dkt. 51.) Two email communications that Defendants designated as privileged are at issue. The first communication is a series of emails (the email string) between Bonneville County's Human Resource Director, John Henderson, and Carl Ericson, ICRMP's in-house attorney. Finding *Hathaway v. Jefferson Cnty., et. al.*, No. 4:23-CV-00254-BLW, 2024 WL 4930574 (D. Idaho Dec. 2, 2024), persuasive, the motion will be denied with regard to the email string. The second communication is one email from the same email string which was produced by Defendants during the exchange of initial

**MEMORANDUM DECISION AND ORDER** - 1

disclosures, but later clawed back. Hatfield contends that, even if the privilege applies, it was waived by virtue of the email's disclosure, and therefore all communications on the same subject matter must be produced to Plaintiff. The Court will reject Hatfield's argument regarding the second communication at issue, as explained below.

## BACKGROUND

On May 1, 2023, Hatfield filed a Complaint against Bonneville County and Lance Bates, alleging violation of the Americans with Disabilities Acts ("ADA"), the Family and Medical Leave Act ("FMLA"), the Idaho Human Rights Act ("IHRA"), and Idaho's Protection of Public Employees Act ("IPPEA"). Compl. (Dkt. 1.) Defendants filed an answer denying the allegations. (Dkt. 6.)

The case was initially assigned to the undersigned magistrate judge. On September 18, 2023, the undersigned conducted a telephonic scheduling conference, and thereafter issued a scheduling order. (Dkt. 15, 16.) The scheduling order included an order pursuant to Fed. R. Evid. 502(d), "that production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or work-product protection in this case or in any other federal or state proceeding." Ord. ¶ 5. (Dkt. 16.)[1]

Because not all parties consented to the jurisdiction of a magistrate judge, the case was reassigned to Senior District Judge B. Lynn Winmill on September 19, 2023. (Dkt.

---

[1] The Court's model discovery plan indicates that the Court will enter a clawback order in its scheduling order "unless the parties object or otherwise request that no such order be issued during the telephone scheduling conference." (Dkt. 11.) The parties raised no objection to the entry of such an order. Later, on September 26, 2024, the parties entered into a stipulated protective order setting forth a detailed protocol for clawback and presumptively privileged information pursuant to Fed. R. Evid. 502(d) and (e). (Dkt. 42, 43.)

**MEMORANDUM DECISION AND ORDER - 2**

17.) Judge Winmill issued an order referring all discovery related matters to the undersigned, and entered an amended scheduling order adopting all deadlines set forth in the Court's September 18, 2023 Order. (Dkt. 19, 20.) The parties thereafter engaged in discovery.

After a telephone conference with Court staff on December 20, 2024, and in compliance with the Court's discovery dispute procedures, Hatfield filed his motion to compel on January 10, 2025.[2] (Dkt. 50, 51.) The at-issue communications were submitted for in camera review. (Dkt. 54.)[3] On January 29, 2025, the Court conducted a hearing by video. (Dkt. 56.)

The communications are between John Henderson, the County's Human Resources Director, and Carl Ericson, the in-house attorney for ICRMP. ICRMP provides employment practices liability insurance coverage to Bonneville County for claims arising out of wrongful employment practices. Decl. of Casperson, Ex. C. (Dkt. 51-5.) According to the terms of the policy, which was in place during the communications at issue, ICRMP agreed to waive the policy's deductible if Bonneville County consulted with ICRMP before pursuing an "employment action, including termination or suspension of employment, and [has] followed all reasonable advice provided by

---

[2] There was a delay in filing the motion due to a similar issue pending before Judge Winmill in the *Hathaway* matter. Prior to filing the motion to compel, the Court conducted two telephone status conferences with the parties regarding their discovery dispute, and was apprised of the status of the pending motion in *Hathaway*, No. 4:23-CV-00254-BLW. (Dkt. 44, 46.)
[3] Docket 54 is sealed for the Court's review only. The documents are identified as Defendants' 218 and 225 – 231. Decl. of Haglund, Ex. A. (Dkt. 53-1.)

**MEMORANDUM DECISION AND ORDER - 3**

[ICRMP] or an attorney assigned by [ICRMP] with respect to such employment action." *Id.*

A related matter, *Hathaway v. Jefferson County, et. al.*, Case No. 4:23-cv-00254-BLW, is proceeding before Senior District Judge B. Lynn Winmill. The matter involves the same counsel and the plaintiff asserts similar violations under the ADA, IHRA, FMLA, and IPPEA against Jefferson County. On May 29, 2024, Hathaway filed a motion to compel, seeking production of asserted privileged communications between Jefferson County employees and Carl Ericson, ICRMP's in house attorney. (Case No. 4:23-cv-00254-BLW, Dkt. 21.) As in this case, the privileged communication was an email seeking legal advice from Ericson in his capacity as an attorney. After briefing on the motion was complete, the Court ordered in camera review of the documents the defendants claimed were privileged. (*Id.*, Dkt. 28.) In compliance with that order, the defendants submitted the disputed documents for review to Judge Winmill in September of 2024.

On December 2, 2024, Judge Winmill issued a memorandum decision and order granting in part and denying in part Hathaway's motion to compel. *Hathaway v. Jefferson Cnty.*, No. 4:23-CV-00254-BLW, 2024 WL 4930574, at *1 (D. Idaho Dec. 2, 2024).[4] With regard to the email communication between Jefferson County employees and Ericson, the Court found the email was protected by the attorney-client privilege. The

---

[4] The motion before the Court in *Hathaway* involved three other email communications that are not relevant for purposes of the motion before the Court in this case, and which the Court held were not privileged. *Hathaway*, 2024 WL 4930574, at *1.

**MEMORANDUM DECISION AND ORDER - 4**

Court explained the email was made for the purpose of seeking legal advice from a legal advisor in his capacity as such. *Hathaway*, 2024 WL 4930574 at *3. The Court rejected Hathaway's argument that the email was not privileged because no protection arises until the insurer acknowledges its duty to defend. *Id.* Hathaway later filed a motion for reconsideration of the Court's order, which motion is pending and ripe for review as of January 15, 2025.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26 governs the scope and limits of discovery. It provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 37, a party seeking discovery may move for an order compelling production by a party who has failed to answer an interrogatory or produce requested documents. Fed. R. Civ. P. 37(a)(3). While the moving party must make a threshold showing of relevance, *see, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), the party resisting discovery carries the "heavy burden" of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs

**MEMORANDUM DECISION AND ORDER - 5**

of the case, or otherwise improper. *See Blakenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Co.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Communications are covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). While this privilege "may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice[, i]f the advice sought is not legal advice…then the privilege does not exist." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). "As with all evidentiary privileges, the burden of proving the attorney-client relationship applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Investments/Indicators Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

## ANALYSIS

**1.    The Email String is Protected from Disclosure.**

Hatfield argues the email exchange between Bonneville County's Human Resources Director and ICRMP's in-house attorney is not privileged because there is no

protection for communications between an insurer and its insured until the insurer acknowledges its duty to defend, and the County thereby becomes ICRMP's client. Rejecting that argument, the Court in *Hathaway* explained that the email from the Jefferson County employee to Ericson requested legal advice and was therefore properly withheld based on the attorney-client privilege. The Court acknowledged that courts have "generally rejected 'any sweeping general notion that there is an attorney-client privilege in insured-insurer communications.'" *Hathaway*, 2024 WL 4930574, at *3 (quoting *Linde Thomson Langworthy Kohn & VanDyke, P.C. v. RTC*, 5 F.3d 1508, 1514–1515 (D.C. Cir. 1993)). However, the Court explained that, because the county employee emailed Ericson for the purpose of seeking legal advice, the cases relied upon by Hathaway were distinguishable. The Court noted that the legal services Ericson provided were connected to the ICRMP agreement, and acknowledged also that the terms of ICRMP's policy stated ICRMP would waive the deductible for employment claims if the County consulted with ICRMP before taking an adverse employment action. Because it was clear that the communication was for the purpose of obtaining legal advice, and not for obtaining insurance coverage, the Court held the email was protected by the privilege and properly withheld on that basis. *Id.*

Here, too, the email exchange initiated by John Henderson, Bonneville County's Human Resources Director, was for the purpose of seeking legal advice. It is clear from the substance of the communication that Ericson provided legal advice. Under these facts,

**MEMORANDUM DECISION AND ORDER - 7**

the undersigned finds no reason to depart from the Court's holding in *Hathaway*.[5] Moreover, at the time the communications occurred, the insurer and the insured had a common or shared interest that supports the attorney-client privilege, even though Hatfield's employment had not yet been terminated and Hatfield had not made a claim to the Idaho Human Rights Commission or filed a complaint with the Court. Finally, the dominant characteristic of the relationship was one of attorney and client – under the terms of the policy, ICRMP made its in-house counsel available to its insured for the purpose of obtaining legal advice before the insured pursued an adverse employment action that could give rise to a claim. *See, e.g., McAdam v. State Nat. Ins. Co.*, 15 F. Supp. 3d 1009, 1015 (S.D. Cal. 2014) (applying dominant purpose test to determine relationship between insurance company and its in-house attorneys).

Hatfield contends that *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 519 (E.D. Cal. 2010) compels the conclusion that no attorney-client relationship arises until the insurer acknowledges a duty to defend.[6] The Court finds *Continental* distinguishable. Interpreting California law, the court explained that a "unique tripartite relationship exists among…the insurer and the insured[] and the defense counsel hired to defend against third-party liability." The court determined that an attorney-client relationship between defense counsel and the insured did not begin

---

[5] In large part, the motion before the Court mirrors the reasons advanced in the motion for reconsideration before the Court in *Hathaway*. By issuing a memorandum decision and order, the Court in no way intends to usurp the district judge's authority to consider the motion to reconsider. Further, the Court decided the issues in this case based upon the facts presented, and the nature of the communications.

[6] Notably, at the hearing Plaintiff's counsel acknowledged there is no Idaho case law supporting her position, and the Court could find none.

**MEMORANDUM DECISION AND ORDER - 8**

until the insurer "acknowledges a duty to defend the insured and provides a defense to the action." *Id.* But *Continental* involved a complex set of facts whereby the insurer initially refused to assume the defense of its insured, and later, almost two years into the litigation, did so under a reservation of rights.

In that case, the insured, Crown, tendered its defense of a wrongful death claim to Continental, which initially declined to defend Crown. Crown also had a policy issued by St. Paul; under that policy, St. Paul held only the right, but not the duty, to defend Crown. St. Paul did not participate in Crown's defense, although Crown informed St. Paul that a lawsuit had been filed. Two years into the litigation, Continental assumed Crown's defense under a reservation of rights, and secured independent counsel to represent Crown due to the conflict. Continental settled the case on behalf of its insured, and later sued St. Paul for contribution. In this later lawsuit, Continental sought communications between independent counsel and St. Paul; between Crown's legal department and St. Paul; and between independent counsel and Crown, which communications had been shared with St. Paul.

The court refused to extend the attorney-client privilege to cover communications between the insured, independent counsel, and the insurer under the above facts, because St. Paul did not retain independent counsel to defend Crown, did not pay for Crown's defense, and never acknowledged any duty to defend or indemnify Crown. The court explained Crown had independent counsel, and St. Paul was not a joint client. Therefore, the court held that St. Paul could not claim that it shared a joint interest in the defense or that it shared a single, common goal with Crown. *Cont'l Cas. Co.*, 265 F.R.D. at 522. The

**MEMORANDUM DECISION AND ORDER - 9**

court held that the privilege related only to communications between independent counsel and Crown. *Id.* at 523 (citing *In re Imperial Corp. of America*, 167 F.R.D. 447 (S.D. Cal. 1995)). Accordingly, the court held that communications between independent counsel and St. Paul, as well as between Crown's legal department and St. Paul, were not covered by the attorney-client privilege, and that communications between independent counsel and Crown that were shared with St. Paul[7] lost their privileged status. *Id.* at 526, 527.

The considerations present in *Continental* which compelled the court to find that no attorney-client relationship between insurer and insured existed are not present here. First, the Court is not confronted with an insurer adverse to its insured. The express terms of the insurance contract incentivizes Bonneville County to seek legal advice from ICRMP's in-house counsel prior to taking adverse employment actions. Thus, from the first contact between insured and insurer, the insurer shared a common interest with its insured, and assumed an active role in the potential defense of any claim that could arise in the future. Nor does ICRMP claim that the policy excused it from the duty to defend. Finally, ICRMP's counsel was contacted for the purpose of evaluating potential liability related to a possible future claim. *See, e.g.*, *Travelers Ins. Companies v. Superior Ct.*, 143 Cal. App. 3d 436, 449, 191 Cal. Rptr. 871, 879 (Ct. App. 1983) ("[A] report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the

---

[7] Emails were cc'd to St. Paul and it was clear to Crown that St. Paul was receiving copies of emails between independent counsel and Crown.

**MEMORANDUM DECISION AND ORDER - 10**

company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.").

Furthermore, the court in *Continental* expressly recognized that, under a traditional set of facts, "communications made by an insured to his liability insurance company, <u>concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication</u>, as being between attorney and client, <u>if the policy requires the company to defend him through its attorney</u>, and the communication is intended for the information or assistance of the attorney in so defending him." *Cont'l Cas. Co.*, 265 F.R.D. at 521 (quoting *Scripps Health v. Super. Ct. of San Diego County*, 109 Cal.App.4th 529, 535, 135 Cal.Rptr.2d 126 (2003)) (emphasis added).

Here, the Court is confronted with precisely those facts. Henderson contacted Ericson pursuant to the terms of Bonneville County's policy with ICRMP about an event which could be the basis of a claim under the policy; the policy requires ICRMP to defend Bonneville County; and, the communications were intended for the information or assistance of either Ericson or defense counsel in defending Bonneville County if litigation arose.[8] Under the facts here, the Court finds the communications between Bonneville County and Ericson are covered by the attorney-client privilege.

Hatfield argues also that *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010), compels the same result – that until the insurer assumes the duty to defend, the

---

[8] Ericson is not representing Defendants in this matter – rather, ICRMP hired outside counsel.

**MEMORANDUM DECISION AND ORDER - 11**

insured is not a client and therefore the attorney-client privilege does not attach to communications between the insured and the insurer's in-house counsel. Hatfield tries too hard to draw a bright line, however, while simultaneously acknowledging that no such bright line can be drawn. *See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resol. Tr. Corp.*, 5 F.3d 1508, 1514 – 1515 (D.C. Cir. 1993) (rejecting the notion that an insured-insurer privilege exists). Nonetheless, "where the insured communicates with the insurer for the express purpose of seeking legal advice with respect to a concrete claim, or for the purpose of aiding an insurer-provided attorney in preparing a specific legal case, the law would exalt form over substance if it were to deny application of the attorney-client privilege." *Id.* at 1515. Such would be the case if the Court accepted Hatfield's argument here. There could be no attorney-client privilege for pre-litigation communications between an insured and its insurer because the communications would precede the tender of a formal claim. The Court declines to accept Hatfield's logic. Here, Henderson sought legal advice pursuant to the terms of the policy, and Ericson provided legal advice about circumstances which could, and did, result in a claim.

Under the facts presented, the Court finds the email communication is protected by the attorney-client privilege.

## 2. There Was No Waiver of the Privilege.

During discovery, Bonneville County disclosed Defendants' 218, which is a single email from the entire email string. The email contains one sentence discussing legal advice and recommendations obtained from Ericson to Bonneville County. Defendants

**MEMORANDUM DECISION AND ORDER - 12**

represent the disclosure occurred during production of initial disclosures,[9] which were exchanged on October 20, 2023; was inadvertent; and was clawed back in March of 2024, when defense counsel discovered the disclosure. Defendants also represent that, during discovery, Plaintiff's counsel made no mention of Bates 218 until December 10, 2024, more than nine months after Defendants clawed back the email. Plaintiff argues the document was not inadvertently disclosed because the email was produced with initial disclosures, and the number of documents produced was not voluminous. *See* Reply at 4. (Dkt. 55.)

Both parties overlook the Court's clawback order, entered pursuant to Fed. R. Evid. 502(d) as part of its scheduling order on September 18, 2023. (Dkt. 16.) While the Court's order may not be as detailed as the parties' later stipulation, the Court's order made it clear that "production of a privileged…document, whether inadvertent or otherwise," is not a waiver of privilege. (Dkt. 16.) There is therefore no need to undertake the analysis under Rule 502(b), because the Court's order was sufficient to prevent waiver of the attorney-client privilege. Fed. R. Evid. 502(d) (setting forth controlling effect of a court order).

If the Court proceeds, however, to the analysis under Rule 502(b), the Court finds the disclosure was inadvertent. Rule 502 applies "to disclosure of a communication or information covered by the attorney-client privilege or work-product protection." The rule applies as a default if there is no agreement otherwise. *Great-W. Life & Annuity Ins.*

---

[9] Counsel represents also that he reviewed 550 pages of documents for disclosure, and additional documents were held back pending a protective order. Mem. at 7. (Dkt. 53.)

**MEMORANDUM DECISION AND ORDER - 13**

*Co. v. Am. Econ. Ins. Co.*, No. 2:11-CV-02082-APG, 2013 WL 5332410, at *14 (D. Nev. Sept. 23, 2013). Fed. R. Evid. 502. Rule 502(b) provides:

> (b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

*Id.* The party seeking to clawback the documents has the burden of proving that the requirements of Federal Rule of Evidence 502(b) are met. *Columbia Cmty. Credit Union v. Chicago Title Ins. Co.*, No. C09-5290RJB, 2009 WL 10688219, at *4 (W.D. Wash. Dec. 22, 2009).[10]

The Court finds Defendants established the elements of Fed. R. Evid. 502(b). The email produced was a single page, and contained one sentence of privileged material located at the bottom of Defendants' 218. Defendants represent that the sentence was inadvertently missed while reviewing over 500 documents for redaction. Thus, although the document itself may have been intentionally produced, the disclosure of a

---

[10] Defendants cite to the test set forth in *U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001). However, this test derives from cases predating the adoption of Rule 502(b) in 2008. *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. 2:23-CV-00932-JHC, 2024 WL 3620467, at *5 (W.D. Wash. Aug. 1, 2024). The Advisory Committee Notes for Rule 502(b) caution that "[t]he rule does not explicitly codify [the totality of the circumstances] test, because it is really a set of non-determinative guidelines that vary from case to case." Fed. R. Evid. 502, Explanatory Notes. Accordingly, while the Court may consider the factors laid out in *Bagley*, it must first consider whether disclosure was in fact inadvertent. *Fed. Trade Comm'n*, 2024 WL 3620467 at *5.

**MEMORANDUM DECISION AND ORDER - 14**

communication protected by the attorney-client privilege was inadvertent.[11] As soon as the unredacted document was discovered during Defendants' later review of their document production in March of 2024, Defendants clawed back the document. *See* Fed. R. Civ. P. 26(b)(5)(B) (requiring the party to notify the opposing party receiving privileged information of the claim and the basis for it).

Under these circumstances, the Court finds Defendants met their burden under Rule 502(b).

## CONCLUSION

The communications at issue here between Bonneville County's HR Director, John Henderson, and ICRMP's in-house attorney, Carl Ericson, are privileged, and the Court's clawback order is sufficient to prevent waiver of the privilege. Alternatively, the Court finds Defendants met their burden under Rule 502(b).

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion to Compel (Dkt. 51) is **DENIED**.

Dated: **January 31, 2025**

Candy W. Dale
United States Magistrate Judge

---

[11] Under Hatfield's logic, any intentional production of a document pursuant to counsel's discovery obligations would constitute an intentional disclosure. But the Court is concerned with the inadvertent disclosure of the underlying content, not the disclosure of the document itself.

**MEMORANDUM DECISION AND ORDER - 15**